The bill in this case is filed to foreclose a mortgage given by the defendants to the United States Building Corporation to secure the sum of $14,000, payable in quarterly installments until the payments aggregated a certain sum, with interest. The defendant Muencks, as owner, had entered into an agreement with the United States Building Corporation, whereby the building corporation was to erect a building for the defendant. The contract was in writing and was filed in the office of the county clerk, pursuant to the statute, and so the building was subject to a mechanics' lien only at the instance of the contractor. The mortgage under foreclosure is a second mortgage, and was given in the course of the construction of the building, to enable the building corporation to finance its operations and complete the building. There was a first mortgage placed by a building and loan association. Under the terms of the building contract the mortgage for $14,000 was to be given by the owner to the contractor upon the completion of the building. When it became apparent that the contractor could not finish the contract without financial aid, an arrangement was made between it and the owner whereby the mortgage in question for $14,000 was given by the owner to the contractor. This was in advance of the time fixed by the contract for the execution and delivery of the mortgage, for the building had not yet been completed. The Paterson National Bank took an assignment of the mortgage and advanced $5,000 to the contractor upon it. Later, this mortgage was assigned by the bank to the present complainant at a discount from its face value.
When the complainant was considering the purchase of the mortgage from the bank, one of its officials said that he interviewed the defendant Peter A. Muencks with regard to the validity of the mortgage, and that he was assured by that defendant that it was a good mortgage and that he owed the money on it. A written declaration of no set-off appears not to have been exacted at that time, but the complainant, *Page 44 
relying upon that verbal statement of the defendant, thereupon took an assignment of the mortgage from the bank.
When the first installment on the mortgage became due a demand for its payment was made on defendant by the complainant, but the defendant asked for an extension of time until the date when the second installment fell due, stating that he would then pay both installments together. When the second installment fell due the defendant made a request for a further extension. Later, another official of the complainant company interviewed the defendants with regard to the payment of the installments due, and he says that Muencks simply asked for further time in which to make the payments. Both officials of the complainant company testified that upon none of these occasions did the defendant say anything to them about any deductions claimed against the full amount of the mortgage. Finally, however, the defendant referred the complainant to his attorney, and upon interviewing him they learned that the defendant claimed that he had paid certain claims based upon stop-notices which had been filed with him after the mortgage was given, and that he had had an arrangement with the contractor whereby he should be permitted to deduct from the amount of the mortgage any amount so paid on stop-notices, if such stop-notices should thereafter be filed with him.
In the present suit there is no dispute with regard to the right of the complainant to foreclose the mortgage, but the defendants insist that they are entitled to deduct from the amount of the mortgage the sum total of the payments made on the stop-notices.
Under the provisions of the Mechanics' Lien act, the owner would be liable to creditors who filed stop-notices if payments had been made to the contractor in advance of the terms of the contract. The giving of this second mortgage for $14,000 prior to the time fixed by the contract was, in effect, a payment in advance of the time so stipulated, and, under ordinary circumstances, if the owner saw fit to make such a payment without exacting releases of claims from those who furnished materials, or performed labor on the building, *Page 45 
he would be, nevertheless, liable to pay the stop-notices from his own funds.
In this case, however, the owner claims that his arrangement with the contractor entitled him to deduct from the mortgage the amounts of these stop-notices paid by him, and that that is an equity between himself and the contractor, which he can assert against the assignee of the mortgage. The complainant, however, contends that he was careful to inquire of the owner about the validity of the mortgage before he took an assignment of it, and that he was assured by the owner that it was a valid mortgage, and that he owed the money upon it. If this is true, then the present holder of the mortgage is protected as against the equities between the mortgagor and the contractor. It would not be necessary that such a declaration of no set-off should be in writing, but as to whether or not there was such a declaration, without its being in writing, simply makes the proof of it more difficult.
I am inclined to the conclusion that the actions of the defendant Peter A. Muencks, at the times that the demands for the payments of installments were made, clearly indicates that he had in mind no valid claim for the deduction which he now insists should be made; otherwise, he certainly would have informed the officials of the complainant company of his right in that respect. The testimony of the official of the complainant company who made the inquiry prior to the taking of the assignment is forceful and unequivocal. In addition to that, we have the evidence of his co-official to the effect that he also made inquiry with regard to the payment of one of the installments, and that no claim was then made by the defendant of the right to make the deduction. This harmonizes with the like situation when the other official of the complainant company made his request or demand for the payment of the first installment.
If the owner makes a payment to a contractor in advance of the time fixed by the building contract for such payment, he does it at his peril; and if, thereafter, stop-notices are served on the owner by workmen or materialmen who have *Page 46 
not been paid by the contractor, the owner, upon the establishment of their validity, is obliged to pay them himself, even though he has no further funds in his hands due and payable to the contractor, because he saw fit to make the payments of those funds to the contractor before they were really due under the contract. But if, at the time the advance payment is made (either in cash or other valuable thing), and at that time the owner and the contractor agree that the owner shall not be held liable for stop-notices that are thereafter filed, then that creates an equity between the owner and the contractor whereby the owner can look to the contractor for reimbursement for the funds which the owner is obliged thus to pay on the stop-notices. This is what Muencks claims was done in the present case. And where a mortgage is given by the owner to the contractor, instead of cash, on account of the contract price, the owner would have the right when it came time to pay that mortgage to deduct from it any amount he had paid on stop-notices in accordance with his agreement between himself and the contractor; and the assignee of that mortgage, under Walz v. Oser, 93 N.J. Eq. 280, would be bound to pay the equity existing between the mortgagor and the mortgagee, unless he obtained from the mortgagor a declaration to the effect that he had no claims or set-offs against the amount due the mortgagee on the mortgage. Of course, if the mortgagor gave such a declaration to the prospective assignee he would then be estopped from setting up, as against that assignee, any secret equity which he might have had against the original mortgagee. Now, that declaration of no set-off is not required to be in writing. The verbal assurance is just as effective to work an estoppel as though it were written; but as in all such cases where the arrangement is verbal, and there is no instrument in writing executed between the parties, the proof to establish such an arrangement simply becomes more difficult. In the present case the complainant says that there was a declaration made by the defendant Muencks to the effect that the mortgage was a valid mortgage and that he owed the money on it. If such a declaration was made, then, manifestly, the defendant cannot *Page 47 
now claim the right to deduct from the complainant any sum from the face of the mortgage. As to whether or not such a declaration was made, depends upon the testimony produced. The complainant says that it was made, and the defendant says that it was not. In support of the complainant's statement, however, that it was made, we have these additional circumstances: Several demands were made upon the defendant by different officials of the complainant company for the payment of the respective installments due under the terms of the mortgage. At the times those demands were made, the defendant made no assertion or claim that he was entitled to deduct from the face of the mortgage any payments on stop-notices as per an arrangement between himself and the contractor, until the last demand was made, and then he referred complainant to his attorney. All that the defendant did when these demands for the payments of the installments were made was to ask for extensions of time within which to make them, and nothing was said by him about any right to make deductions because of the payments on the stop-notices until he referred the complainant to his attorney at the time of the last demand. It seems to me that in the ordinary course of business, and as between business men, if there had been any such secret arrangement between the owner and the contractor as the defendant now contends, that would have been the first thing that the defendant would have called the complainant's attention to when a demand was made for the payment of the mortgage, or any part thereof. His silence in this respect on the several occasions referred to, plus his request for an extension of time within which to make the payments, indicates to my mind that the defense of part payment because of the stop-notices and the right to deduct the amount so paid from the face of the mortgage is simply an afterthought, interposed in opposition to the payment of the mortgage in full when foreclosure was commenced. The weight of the evidence in this respect, to my mind, is in favor of the complainant, under all the circumstances disclosed by the evidence, and I am, therefore, thoroughly convinced that the defendant is not *Page 48 
entitled to make any deductions in the manner he claims, and that the complainant is entitled to a decree for the full amount of his mortgage, with interest and costs, with no deductions therefrom because of the amount paid or claimed to have been paid by the defendant under the stop-notices.
I will advise a decree accordingly.